**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | )   Criminal Action No. 3:07cr113-HEH |
| | ) |
| **DANIELLE WILLIAMS,** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

### REPORT AND RECOMMENDATION

This matter comes before the undersigned Magistrate Judge for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on the Government's Application for Writ of Continuing Garnishment Pursuant to 28 U.S.C. § 3205, Defendant Danielle Williams's Request for Hearing and Claim for Exemption Form, and the Government's Motion for Entry of a Garnishment Disposition and Dismissal Order. (ECF Nos. 31, 41, 42, 43, 45.) McGuireWoods LLP, the garnishee, filed its Answer of the Garnishee on October 6, 2025. (ECF No. 37.) Defendant did not file a response to the Government's Motion for Entry of a Garnishment Disposition and Dismissal Order, and the deadline to do so in a timely manner has passed. On October 30, 2025, the Court held a hearing in this matter. Therefore, these matters are ripe for disposition.

For the reasons set forth below, the Court RECOMMENDS that Defendant's Request for Hearing and Claim for Exemption Form (ECF No. 41) be DENIED and that the Government's Motion for Entry of a Garnishment Disposition and Dismissal Order (ECF No. 43) be GRANTED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2007, Defendant pled guilty to one count of Bank Fraud, in violation of 18 U.S.C. § 1344. (ECF Nos. 1, 3, 8.) On July 5, 2007, the Court sentenced Defendant. (ECF No.

12, 14.) Defendant's sentence includes an order that she make restitution in the amount of $333,057.59 to the victim, Zurich North America. (ECF No. 14, at 5.) The Judgment provides that such restitution "is due and payable immediately." (ECF No. 14, at 5.) It further states that "Nothing in the court's order shall prohibit the collection of any judgment, fine, or special assessment by the United States." (ECF No. 14, at 6.)

On September 17, 2025, as part of collection efforts, the Government filed the Application for Writ of Continuing Garnishment Pursuant to 28 U.S.C. § 3205 at issue here. (ECF No. 31.) This Application lists Defendant's outstanding restitution balance as $298,656.76 as of September 17, 2025. (ECF No. 31, at 1.) It further states that the garnishee, McGuireWoods LLP, "is believed to owe or will owe money or property to the defendant, or is in possession of property of the defendant, and said property is a substantial non-exempt interest of the defendant." (ECF No. 31, at 2.)

On September 19, 2025, a Clerk's Notice and Writ of Continuing Garnishment was issued. (ECF Nos. 32, 32-1.) On October 6, 2025, the Government filed a Certificate of Service, certifying that a copy of the Writ of Garnishment, Clerk's Notice, Request for Hearing, Claim for Exemptions, and Instructions to the Defendant had been sent to Defendant via certified mail, return receipt requested on October 1, 2025. (ECF No. 35.)

On October 6, 2025, McGuireWoods LLP filed its Answer of the Garnishee. (ECF No. 37.) In the Answer, the garnishee declares as of October 1, 2025 that it employed Defendant and had semi-monthly pay periods. (ECF No. 37, at 1.) It calculated Defendant's gross wages for the pay period beginning on October 1, 2025 and ending on October 15, 2025 to be $2,512.50 and her net wages (after subtracting total tax withholdings) to be $2,096.39. (ECF No. 37, at 1-2.) Neither party objected to the garnishee's answer.

On October 7, 2025, Defendant filed a Request for Hearing and Claim for Exemption Form. (ECF No. 41.) In that filing, Defendant does not claim an exemption. (ECF No. 41.) Instead, she seeks a hearing based on financial hardship. (ECF No. 41, at 1.) Specifically, she contends that "this garnishment would cause financial hardship leaving [her] unable to meet [her] living expenses." (ECF No. 41-1, at 1.) Defendant further requests "that the garnishment be paused temporarily" while a new payment plan is negotiated "that fits [her] current financial situation." (ECF No. 41-1, at 1.) In support of her claim of financial hardship, Defendant attaches a Financial Statement of Debtor and various documents relating to her finances. (ECF No. 41-2.)

On October 10, 2025, the Government filed a Motion for Entry of a Garnishment Disposition and Dismissal Order. (ECF No. 43.) The United States moves for a Court order directing McGuireWoods LLP to pay to the Clerk of Court 25 percent of post-tax wages otherwise due to Defendant, which it currently calculates at $1,048.19 per month based on the Answer of the Garnishee. (ECF No. 43-1.)

On October 30, 2025, the Court held a hearing in this matter. Defendant submitted additional exhibits pertaining to her current financial status at the hearing. (ECF No. 51.) The Court also heard argument from both parties as to their respective positions.

## II.    LEGAL STANDARD

Under the Mandatory Victim Restitution Act ("MVRA"), restitution orders in criminal judgments may be enforced in the same manner as authorized by Federal or state law for the enforcement of a civil judgment. 18 U.S.C. §§ 3613(a), 3664(m)(1)(A). The Federal Debt Collection Procedures Act ("FDCPA"), which contains procedures for garnishment, provides one such enforcement mechanism. 28 U.S.C. § 3205.

3

Under the FDCPA, "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." *Id.* § 3205(a). To obtain a writ of garnishment, the Government must first serve an Application for a Writ of Garnishment and the Clerk's Notice on the judgment debtor. *Id.* § 3202(c). The judgment debtor may move to quash the garnishment and request a hearing. *Id.* § 3202(d). If such a hearing is requested, the Court shall hold a hearing, but the issues under the purview of the Court are limited "to the probable validity of any claim of exemption by [Defendant]; . . . to compliance with any statutory requirement for the issuance of the postjudgment remedy granted;" and to issues challenging default judgment. *Id.* "[T]he court shall issue an appropriate writ of garnishment" where the requirements for obtaining such a writ have been satisfied. *Id.* § 3205(c).

### III. ANALYSIS

In her Request for Hearing and Claim for Exemption Form, Defendant does not claim any statutory exemptions under 18 U.S.C. § 3613(a) and 26 U.S.C. § 6334(a), nor does she challenge the Government's compliance with required procedural steps to obtain a writ of garnishment. (ECF No. 41.) Defendant confirmed this at the October 30, 2025 hearing. Instead, she argues that issuing "this garnishment would cause financial hardship leaving [her] unable to meet [her] living expenses." (ECF No. 41-1, at 1; *see also* ECF No. 41.)

The Government argues that financial hardship is not a cognizable ground to challenge a writ of garnishment. (ECF No. 43, at 6.) Specifically, the United States contends that under 28 U.S.C. § 3202(d), a judgment debtor may move to quash a garnishment only by claiming an exemption or challenging procedural compliance. (ECF No. 43, at 6.) Because Defendant does

4

not raise one of those limited issues, the Government urges the Court to enter the Garnishment Disposition Order, directing the garnishee to pay to the Clerk of Court 25 percent of the post-tax wages otherwise due to Defendant. (ECF No. 43, at 7; *see also* ECF No. 43-1.)

The Court agrees with the Government that Defendant is not entitled to relief under 28 U.S.C. § 3202(d) because she has not moved to quash the garnishment by asserting "any claim of exemption," questioning the Government's "compliance with any statutory requirement," or challenging any default judgment. *Id.* § 3202(d); *see also United States v. Guzman*, No. 5:21-cr-31, 2024 U.S. Dist. LEXIS 2135, at *3 (W.D.N.C. Jan. 4, 2024) (citing 26 U.S.C. § 6334) (denying request for hearing and claim for exemption because "general financial hardship is not grounds for a claim of exception"). However, affording Defendant's *pro se* filings a liberal construction, *United States v. Green*, 67 F.4th 657, 663 (4th Cir. 2023), the Court construes her request as seeking to limit or modify the requested garnishment.

The FDCPA defines "nonexempt disposable earnings" as "25 percent of disposable earnings, subject to section 303 of the Consumer Credit Protection Act," 28 U.S.C. § 3002(9), which, in turn, provides that "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed [] 25 per centum of his [or her] disposable earnings for that week," 15 U.S.C. § 1673(a)(1). Thus, the 25 percent threshold provides a ceiling for garnishment of a debtor's disposable earnings, but a Court may in its discretion impose a lower rate where appropriate. *See United States v. Turner*, No. 5:01-cr-30062, 2022 U.S. Dist. LEXIS 131011, at *3-4 (W.D. Va. July 20, 2022), *report and recommendation adopted*, Order, No. 5:01-cr-30062 (W.D. Va. filed Sept. 2, 2022) (acknowledging that while "[o]ften, a writ of garnishment to a debtor's employer will direct the employer to withhold '25 percent of disposable earnings' owed to the debtor each workweek, 28

5

U.S.C. § 3002(9) (citing 15 U.S.C. § 1673(a)), . . . the court may issue a writ directing the employer to withhold less than 25 percent of the debtor's weekly disposable earnings when departing from the statutory standard is warranted.") (collecting cases).

The FDCPA provides that the Court "may at any time on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter," including garnishments. 28 U.S.C. § 3013. Courts apply "a concept of reasonableness" in determining whether to modify a writ of garnishment under 28 U.S.C. § 3013 and have considered a defendant's financial situation in conducting that reasonableness analysis. *United States v. Gibson*, No. 2:20-cr-92, 2025 U.S. Dist. LEXIS 174173, at *4-5 (E.D. La. Sept. 8, 2025) (quoting *United States v. Ogburn*, 499 F. Supp. 2d 28, 30 (D.D.C. 2007) (collecting cases)); *see also United States v. Freeman*, No. 3:99-cr-101, 2024 U.S. Dist. LEXIS 175601, at *6 (W.D. Ky. Sept. 27, 2024) ("And many courts have found that the discretion afforded by § 3013 permits the court to consider financial hardship to the defendant and limit the government's enforcement remedies accordingly.") (collecting cases); *United States v. Crowther*, 473 F. Supp. 2d 729, 730-31 (N.D. Tex. 2007); *United States v. Dover*, No. 4:02-cr-50001, 2016 U.S. Dist. LEXIS 25959, at *10 (E.D. Mich. Mar. 2, 2016); *United States v. Porreca*, No. 3:98-cr-262-1, 2018 U.S. Dist. LEXIS 62947, at *5 (W.D.N.C. Apr. 12, 2018).

Here, Defendant contends that a 25 percent wage garnishment would subject her to financial hardship. She asks the Court to "pause[] temporarily" the garnishment to allow her to negotiate "a payment plan that fits [her] current financial situation." (ECF No. 41-1.) At the hearing, Defendant asked that the Court reduce the percentage of any garnishment based on her financial condition. The Court therefore finds it appropriate to consider Defendant's financial hardship argument under 28 U.S.C. § 3013 in determining whether to modify or limit the writ of

garnishment. However, having considered the financial information presented by Defendant, the Court finds, in its discretion, that it would not be appropriate to limit or otherwise modify the writ of continuing garnishment sought by the Government for the following reasons.

First, the Court declines Defendant's request to pause the garnishment to allow her to negotiate a new payment plan. In a filing, she contends she fell behind on an original payment plan due to unforeseen medical expenses. (ECF No. 41-1.) At the hearing, Defendant stated she had agreed to pay $100 a month and acknowledged that she last made a voluntary payment toward restitution in February 2025—nine months ago. She did not present an excuse for not continuing those voluntary payments, and the financial information submitted does not support an inability to make such payments. The Government asserts that Defendant's last voluntary payment was made on February 5, 2025 in the amount of $200, that payments before were sporadic, and that she still owes $298,656.76 in restitution. (ECF No. 43, at 7.) Under these circumstances, the Court does not find it reasonable or appropriate under 28 U.S.C. § 3013 to limit or modify the Government's ability to utilize the garnishment enforcement mechanism by requiring it to negotiate another payment plan with Defendant. *See Turner*, 2022 U.S. Dist. LEXIS 131011, at *4-5 (denying Defendant's request for a voluntary payment plan where the Government had satisfied the requirements to obtain an appropriate writ of garnishment).

Second, the Court rejects Defendant's challenge to the calculation of her disposable earnings subject to garnishment. In her Financial Statement of Debtor, Defendant lists her gross monthly wages as $5,039.00 but lists her net monthly wages as $2,356.00. (ECF No. 41-2, at 3, 10.) In the Answer of the Garnishee, McGuireWoods LLP lists Defendant's gross semi-monthly pay as $2,512.50 ($5,025.00 monthly) and her net semi-monthly pay after tax withholding as $2,096.39 ($4,192.78 monthly). (*See* ECF No. 37.) Importantly, neither party filed objections to

7

the garnishee's answer. *See* 28 U.S.C. § 3205(c)(5). At the hearing, Defendant explained the difference in the calculations of net pay. Defendant's Financial Statement of Debtor lists her take home pay after subtracting not only required tax withholdings (as the garnishee's answer does) but also voluntary deductions, such as contributions to her retirement plan, payments on loans taken from her retirement account, employee premiums for health insurance, and health savings account contributions. (*See* ECF No. 41-2, at 12-15.) Defendant argues that any garnishment should be calculated as a percentage of her monthly pay after all deductions, not just tax withholdings. Contrary to Defendant's argument, the Consumer Credit Protection Act ("CCPA") (which the FDCPA incorporates, 28 U.S.C. § 3002(9)), defines "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C. § 1672(b). Given this statutory language, tax withholdings mandated by law are properly excluded from Defendant's disposable earnings, but voluntary deductions from her pay should not be excluded. Therefore, any garnishment should be based on Defendant's post-tax wages, which McGuireWoods LLP calculates as $4,192.78 monthly. (*See* ECF No. 37.)

Finally, Defendant asserts that garnishment of her wages would leave her unable to meet her living expenses. (ECF No. 41-1.) At the hearing, Defendant stated that she could pay no more than $300 per month (or about 7 percent of her post-tax wages) based on her living expenses. The Government counters this argument by pointing to the total monthly living expenses reported by Defendant and comparing those to her post-tax wages. (ECF No. 43, at 6.)[1] Specifically,

---

[1] The Government also raised concerns about Defendant's bank statements showing additional income or unexplained deposits on top of her semi-monthly wages. (ECF No. 43, at 6; *see also* ECF No. 41-2, at 20-29.) At the hearing, Defendant introduced exhibits explaining those deposits as proceeds from a loan against her retirement account or as payments made from her

Defendant reported $2,351 in monthly living expenses, and her calculation included expenses for cable, internet, food, car payment, gasoline, car insurance, cell phone, clothing/misc., health care, and 401k loan repayment. (ECF No. 41-2, at 10.) As the Government notes, subtracting those monthly expenses from Defendant's post-tax monthly wages results in a positive monthly cash flow of $1,841.78, which would cover the anticipated $1,048.19 monthly wage garnishment and leave Defendant with around $800 a month for other expenditures. (ECF No. 43, at 6.)

While the garnishment sought by the Government will have an adverse impact on Defendant, in that it will reduce her take home pay, that alone does not justify relief under 28 U.S.C. § 3013. As a result of this garnishment, Defendant may be required to make different elections regarding voluntary deductions from her wages or different choices regarding lifestyle expenditures. However, in considering Defendant's claim of financial hardship, the Court must also balance the victim's right to full and timely restitution. 18 U.S.C. § 3771(a)(6); *see United States v. Grimes*, 173 F.3d 634, 639 (7th Cir. 1999) ("The victim is entitled to an order directing restitution to him of his full loss, regardless of the defendant's present or even likely future circumstances . . . ."). Here, Defendant still owes $298,656.76 in restitution to the victim stemming from a 2007 judgment and has made only sporadic voluntary payments towards her obligation, with her last payment being made nine months ago in February 2025 in the amount of $200. (ECF No. 43, at 7.) Considering Defendant's current financial situation[2] as a whole, based on the

---

husband to cover payments for an auto loan, cell phone, and car insurance for personal property in Defendant's name but used by him. (ECF No. 51, Defendant's Exhibits 1 and 2.)

[2] At the October 30, 2025 hearing, Defendant raised concerns about the impact a continuing garnishment may have on her ability to cover potential future expenses associated with caring for her elderly mother, including costs associated with an assisted living facility which may be needed in the future. At this stage, the Court does not have sufficient information to consider these potential future costs and how much of those Defendant would need to shoulder. Defendant may renew her financial hardship argument in the future should her financial circumstances materially change.

information she provided, the competing right of the victim to restitution, and the positions of the parties, the Court finds that a 25 percent garnishment would not be unreasonable or inequitable. Therefore, the Court recommends that Defendant's request to limit or modify the garnishment under 28 U.S.C. § 3013 be denied.

### IV. CONCLUSION

After careful consideration of the parties' arguments and filings, and for the reasons set forth above, the Court RECOMMENDS that Defendant's Request for Hearing and Claim for Exemption Form (ECF No. 41) be DENIED and that the Government's Motion for Entry of a Garnishment Disposition and Dismissal Order (ECF No. 43) be GRANTED. Specifically, the undersigned RECOMMENDS that the Court enter a Garnishment Disposition Order finding that Defendant's claim of financial hardship does not justify modifying or limiting the Writ of Continuing Garnishment issued to garnishee McGuireWoods LLP and directing the garnishee to pay to the Clerk of Court 25 percent of the post-tax wages otherwise due to Defendant.

Let the clerk forward a copy of this Report and Recommendation to the Honorable Senior United States District Judge Henry E. Hudson, all counsel of record, Defendant Danielle Williams at 7933 Capistrano Drive, Richmond, VA 23227, and garnishee McGuireWoods LLP at Gateway Plaza, 800 East Canal Street, Richmond VA 23219.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar**

**you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ *[signature]*
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: November 4, 2025